### TINSLEY v. JEMISON et al.

(Circuit Court of Appeals. Second Circuit. May 12, 1896.)

1. EVIDENCE—ORAL TO VARY WRITTEN.
   The city of H., owing a debt of about $1,000,000, of which F. & S. held $338,000 and C. & Co. $350,000, agreed, after litigation with these parties, in which they sought to enforce the debt, to compromise the same by the issue of $500,000 5 per cent. bonds and $500,000 6 per cent. bonds. F. & S. were to have sixes for the amount of their claim, and C. & Co. fives, and the city also agreed with F. & S. that they might receive 6 per cent. bonds for any of the debt they might hold or acquire, up to $400,000. Thereupon one J., acting for F. & S., made an agreement in writing with defendant by which, after reciting the city's agreement to compromise. defendant, among other things, agreed to accept, in exchange for certain indebtedness of the city owned by him, evidenced by bonds, judgments, and past-due coupons, new 5 per cent. bonds of the city. Certain other terms of this contract were carried out, but upon J.'s tendering to defendant the 5 per cent. bonds, and demanding his bonds and other evidences of debt, defendant refused to perform, whereupon J. and F. & S. brought suit against him. *Held,* that such contract was plainly one for the purchase of defendant's claims against the city, and that evidence of prior circumstances and correspondence could not be received for the purpose of showing that the writing did not express the whole contract, and that it was really one of exchange between defendant and the city.

2. SAME—CONTRACTS—FALSE REPRESENTATIONS.
   *Held,* further, however, that it was error to refuse to permit defendant to prove the representations upon which he entered into the contract; he having set up in defense that he had been induced to make it by J.'s false representations that all the creditors, except F. & S., for their own claim only, must accept 5 per cent. bonds.

3. SAME—DISCREDITING WITNESS.
   *Held,* further, that a letter from F. & S. to J., asserting that outside creditors could get only 5 per cent. bonds, that the writers were the only persons to receive sixes, and incorrectly stating their contract with the city, did not discredit the testimony of one member of the firm that they had a contract with the city allowing them to exchange claims, which they had bought, for 6 per cent. bonds.

4. CONTRACTS—MEASURE OF DAMAGES.
   *Held,* further, that, to entitle plaintiffs to recover anything, it must be shown that if they had obtained defendant's bonds, etc., they could have exchanged them for 6 per cent. bonds, and that the measure of damages

was the difference between the value of such 6 per cent. bonds and the 5 per cent. bonds which they were to have given in exchange for defendant's bonds, etc., less the amount received for certain coupons, deposited by defendant as security, and of which plaintiffs had had the benefit.

5. SAME—PROVISION FOR CANCELLATION.

*Held*, further, that a provision in the contract that it should be canceled if the agreement of compromise with the city were not carried out was not made operative by the fact that some of the city's old indebtedness remained outstanding; the compromise having been carried out between the parties to it, and the city being ready to issue the new bonds to others.

In Error to the Circuit Court of the United States for the Southern District of New York.

Frederic A. Ward, for plaintiff in error.

John L. Hill, for defendants in error.

Before SHIPMAN and WALLACE, Circuit Judges.

SHIPMAN, Circuit Judge. The case which the plaintiffs in the circuit court (Jemison and Fazende & Seixas) presented in their complaint and their testimony was as follows: In May, 1887–88, the city of Houston, in Texas, owed sundry persons about $1,000,-000, which was evidenced partly by defaulted 6 per cent. bonds, partly by judgments upon these bonds against the city, and partly by 8 per cent. bonds. In addition, it owed $109,000 market-house bonds, bearing 8 per cent., which were secured in part upon real estate of the city. The firm of Fazende & Seixas, of New Orleans, owned $338,000, and Coler & Co., of New York, owned about $350,-000, of the first-named indebtedness. Each of these creditors had, by litigation, pressed the city for payment, and Fazende & Seixas had procured from a court of the United States an order to levy a tax to pay their judgments. In this state of things, Fazende & Seixas, acting for themselves and for Coler & Co., negotiated about April 5, 1888, a compromise with the city of Houston, by which it agreed to issue $500,000 of 5 per cent. bonds, and $500,000 of 6 per cent. bonds, the whole maturing in 30 years, in substitution for its indebtedness of $1,000,000. The market-house bonds were not included in this settlement. As Fazende & Seixas had, at their expense, brought the litigation to a point which compelled the city to compromise, it was agreed between them and Coler & Co. that the latter would take 5 per cent. bonds, and the former could have the 6 per cents. It was also agreed between the city and Fazende & Seixas that they could receive 6 per cent. bonds for any indebtedness which they should hold or acquire, not to exceed $400,-000. So that it was, as they supposed, for their pecuniary advantage to purchase or acquire at least $62,000 more of this debt. On April 14, 1888, the plaintiff Jemison, acting for himself and for Fazende & Seixas, entered into a written agreement, not under seal, with the defendant, Tinsley, who owned about $72,000 of the indebtedness. The contract, after reciting that an agreement to compromise the defaulted indebtedness of the city of Houston had been made, and that Tinsley owned about $72,000 of this debt, was in substance as follows: Tinsley agreed to sell and accept from Jemi-

son 80 cents cash on the dollar for $20,000 of the old consolidated issue 6 per cent. bonds of the city of Houston, and accrued interest thereon to July 1, 1888, in all amounting to $20,600, and to accept the new compromise 6 per cent. bonds of said city of Houston, in exchange for $10,000 of the present market-house 8 per cent. bonds, and to accept in exchange for the balance of said indebtedness owned by him, bonds, judgments, and past-due coupons, not barred by the statute of limitation, new 5 per cent. bonds of said city of Houston; both of the above exchanges to be made dollar for dollar. Tinsley also agreed to deposit with Jemison $7,000 city of Houston coupons, to be held by him until the terms of this agreement had been complied with, not later than December 1, 1888. Jemison agreed to receive the $20,000 consolidated 6 per cent. bonds, issue of 1876, of the city of Houston, and to pay for same on basis of 80 cents on the dollar for principal and interest, and to deliver $10,000 of new compromise bonds, 6 per cent., of Houston city, in exchange for a like amount of market-house 8 per cent. bonds of said city of Houston, and to deliver to Tinsley 5 per cent. bonds of the new issue of said city of Houston, in amount sufficient to cover the balance of said indebtedness owned by him, including bonds, judgments, and past-due coupons not barred by statute of limitation, said exchange to be made dollar for dollar. It was agreed that if, from any cause whatever, the compromise between the city of Houston and certain of its bondholders, hereinbefore referred to, shall not be effected, then in that event this agreement shall be canceled and considered null and void, and the $20,000 consolidated 6 per cent. bonds, above referred to, shall be returned to Tinsley. Jemison paid Tinsley $16,000 for his $20,000 6 per cent. bonds, and Tinsley delivered to Jemison $7,014 of the city's coupons. Fazende & Seixas thereafter received the city's new 6 per cent. bonds in lieu of these bonds and coupons and the interest thereon. On December 1, 1888, Jemison tendered to Tinsley $35,000 new 5 per cent. bonds, and demanded an equal amount of his bonds or evidences of debt, and also tendered $10,000 new 6 per cent. bonds for $10,000 market-house bonds. Tinsley had theretofore rescinded the contract, and refused to accept the tender or deliver the bonds. The plaintiffs thereupon brought this suit against him, to recover their damages for his alleged breach of contract.

The defendant alleged, in his answer, as a defense, that he was induced to enter into the contract of April 14th by false and fraudulent representations of Jemison, the important part of which was that, unless the defendant joined in the compromise with the city, it would fall through to his injury, and that, under the agreement of compromise, the defaulted bonds and indebtedness of the city were to be retired by new 5 per cent. bonds, and that no creditor was to receive bonds at a larger rate of interest than 5 per cent., except Fazende & Seixas, who were to receive 6 per cent. bonds in exchange for their own indebtedness, and except the owners of the market-house bonds. The defendant presented three defenses: (1) That the contract between the parties was one of exchange of bonds, and was not a contract of sale and purchase; (2) that Jemison

falsely represented that all the creditors, other than the market-house bond owners, must accept 5 per cent. bonds, except that Fazende & Seixas were to have 6 per cents. for their own indebtedness only; and (3) that, by the contract with the city, Fazende & Seixas·had no right to receive sixes for newly-purchased indebtedness, and, not having such right, they had suffered no damage by the breach of the contract sued upon. The jury having returned a verdict for the plaintiffs, this writ of error was brought by the defendant.

Upon the first point, the defendant offered proof of circumstances for the purpose of showing that the contract, as written, did not express the entire agreement of the parties, and that the actual agreement was one of exchange. For example, a letter dated May 24, 1888, written by Jemison to Fazende & Seixas, was offered upon his cross-examination, "to show that the contemplation of these parties and their agreement with us [the defendant] was to fund them at fives, and not sixes." Jemison was also asked if he did not think it likely when he made the contract with Tinsley that he might have to put in the bonds for fives, and if he did not understand subsequently that he would have to put them in at fives, and if he had not said that they were going in at fives, pursuant to the Tinsley contract. A deposition of Coler was offered to prove that the agreement between the parties to the suit was "that Mr. Tinsley's bonds should be funded at fives." For the purpose of modifying or altering the terms of the contract or explaining it, the judge properly excluded the testimony, upon the ground that all prior terms were merged in the agreement, and that it was plain and needed no explanation, and furthermore refused to charge that the agreement, save as to the $20,000 of old sixes and the market-house bonds, was an agreement of exchange, and that the plaintiffs, in making exchange of Tinsley's holdings, were acting as agents of the city of Houston, and had no right to exchange them except for new 5 per cent. bonds. There can be no doubt as to the propriety of this ruling, and of this refusal; for the contract is plainly one for the purchase of Tinsley's claims of all classes against the city of Houston.

Upon the third point, the trial judge charged the jury:

"To entitle Mr. Jemison to recover anything, it must be made apparent by testimony that, if the contract had been carried out, he would have made something. In other words, it must be determined from the evidence that, had he obtained Mr. Tinsley's bonds, he could have funded them at six per cent.; that is, for new sixes instead of new fives."

Upon the second point, the trial judge refused to permit Tinsley to answer the following questions:

"Upon what representation were you induced to sign this contract with Mr. Jemison which is set out in the complaint in this action and in the controversy here? Did you, in consequence of certain representations made by Jemison to you, upon the faith and truth of which you relied, make this contract, and surrender what securities you did surrender to Mr. Jemison?"

The judge was undoubtedly misled by the supposition that the questions were designed to bring out conversations in regard to terms not embodied in the contract; but the questions appear in the

record to have been asked for the purpose of proving the defense of alleged material false and fraudulent representations, which beguiled the defendant into the execution of the contract; and for this purpose they were admissible, it being well understood that fraud is a good defense in an action at law upon a simple contract. 2 Pars. Cont. 280; Hazard v. Irwin, 18 Pick. 95. For this error the judgment must be reversed.

Many exceptions were taken to the exclusion of testimony, but it is necessary to refer only to a few of them.

A letter dated April 9, 1888, from Fazende & Seixas to Jemison, was offered in evidence by the defendant, upon the cross-examination of Seixas, for a number of purposes,—to show under what circumstances the contract of April 14th was made, to show that his firm were merely exchange agents, and that they knew they had no right to receive new 6 per cent. bonds in exchange for the Tinsley bonds. It was excluded, upon the ground that prior proposed terms were merged in the agreement. In the course of the examination, the trial judge informed the defendant's counsel that if he had any testimony to contradict or discredit the witness' statement that he had an agreement with the city of Houston whereby he was to give bonds that he had and controlled in exchange for new sixes, not to exceed $400,000, it would be admitted. The counsel replied that he claimed that this was shown by the letter of April 9th, which was again excluded. The propriety of this ruling presents a more doubtful question. The letter was written for the purpose of impressing upon Jemison the importance of inducing outside creditors to accept 5 per cent. bonds. It asserted that these bonds were all that they could obtain, and did not truly or accurately state the contract with the city of Houston, in that it said that the writers were the only parties who were to receive 6 per cent. bonds, by which was apparently meant they and those whom Jemison represented. With some hesitation, we think that the letter did not discredit the witness' statement that his firm had a right to purchase bonds for exchange in addition to the amount which they then held.

A deposition of Coler was offered to show the terms of the compromise agreement with the city of Houston, which was an issue in the case. It was excluded, but as the deposition is not in the record, and we have no means of knowing its contents, or whether Coler, who was not present when the agreement was made, had personal knowledge of its terms, we have no means of knowing the correctness of the grounds of exclusion.

The contract provided that it should be canceled if the compromise agreement between the city of Houston and certain of its bondholders should not be effected, and the defendant excepted to the court's refusal to charge that there could be no recovery in the suit, it having been shown that the compromise had not been carried out. The agreement, so far as the city of Houston, Fazende & Seixas, and Coler & Co. were concerned, was apparently fully carried out. The fact that on March 10, 1890, $140,000 of the city's old bonds, of different classes, were outstanding, is immaterial. The city was apparently ready to issue new bonds, and the compromise agreement

between the parties to it had been carried into effect, although bond-holders who were not parties had not accepted its provisions.

The court charged the jury that if they found that, under the compromise agreement with the city, the plaintiffs could have obtained 6 per cent. bonds if they had received the Tinsley bonds, according to the contract which was sued upon, the damage which was sustained by not receiving the old securities, other than the market-house bonds, was the difference between the value of the new sixes on December 1, 1888, and $35,000 of new fives on the same day; but that, the plaintiffs having received from Tinsley $7,014 of coupons which, with the interest thereon, they had funded, he was entitled to credit for their value on December 1, 1888. The testimony was substantially in accord that the market value of new fives and of the old indebtedness was at 80 per cent. on that day. The jury found that the difference in value to which the plaintiffs were entitled was $7,100, from which was to be deducted $6,800, being the value of the coupons, and interest accrued thereon, which they received from Tinsley, and rendered a verdict for $300. To this rule of damages the defendant excepted, and urges that it is inconsistent with a rule which forbids the allowance of special and exceptional profits. The defendant had, for a consideration, agreed to deliver his old securities, other than the market-house bonds, which were about $35,000, at par, and receive therefor an equal amount in new 5 per cent. bonds. The jury found that the old securities were fundable by the plaintiffs in 6 per cent. bonds. Their damage by the breach was the difference between the market value of the 6 per cent. bonds and the market value, or what they would have been compelled to pay, on December 1, 1888, for old securities or 5 per cent. bonds, which were at the same price. The element of speculation or remote profits does not exist in the case. On the contrary, if the contract between the parties was free from fraud, these profits were what Chief Justice Nelson, in Masterton v. Mayor, etc., 7 Hill, 61, 69, styled "the direct and immediate fruits of the contract." The subject of damages which properly can arise out of a loss of profits has been recently treated with fullness and with an examination of authorities, in U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, and in Howard v. Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500; and the conclusions of the supreme court need not be repeated.

The judgment of the circuit court is reversed, with costs.